TRUSSED CONCRETE STEEL CO. v. GOLDBERG et al.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1915.)

No. 2585.

PATENTS ⬯328—INFRINGEMENT—CONCRETE FLOOR CONSTRUCTION.

    Claim 4 of the Buente patent, No. 681,870, for fireproof floor construction, consisting of concrete joists, reinforcing trussed structures therein, and hollow refractory centers between the trussed structures, and the Kahn patent, No. 768,284, for a combined steel and concrete beam,. as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit by the Trussed Concrete Steel Company against A. L. Goldberg and others. From a decree dismissing the bill, complainant appeals. Affirmed.

E. N. Pagelsen, of Detroit, Mich., for appellant.

C. P. Byrnes, of Pittsburgh, Pa., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 681,870, September 3, 1901, to Buente, on fireproof floor construction, and United States patent No. 768,284, August 23, 1904, to Kahn, on combined steel and concrete beam. The District Court held neither patent infringed, and accordingly dismissed the bill.

The structure of Buente's patent in suit consists, broadly, of a series of concrete joists, metal reinforced, having hollow tile or refractory centers between joists; the concrete not only inclosing the reinforcement which helps form the joists, but completely filling in the space between the tiles. The floor was designed to be constructed "in place," as distinguished from a factory construction. In building floors of this general nature in place, it had been customary to use temporary supports or "centering" for sustaining the weight of the wet and heavy concrete structure during the setting and drying process. The first of the three objects of the invention stated in the specifications was to dispense with these temporary supports. Buente accordingly provided a wooden sleeper connecting the main floor beams (or extending from the floor beams to the wall), represented by the numeral *2* in Fig. 1 of the patent drawing here reproduced, being a partial vertical section taken at right angles to the main floor beams.

*Fig. 1.*

The drawing shows a series of plates *3* projecting beyond the sides of the floor joists, each plate provided with a depending support *4* having a clip *5* secured at its lower end, the clip supporting the tile. "A truss wire *6* preferably secured to angle bars *7* at the ends of the sleeper extends through these clips, forming a trussed structure." Supplemental truss wires or rods *8* (inclined in opposite directions on opposite sides of the center of the sleeper) extend from the end of each plate *3* downwardly to and secured in the clip at the lower end of the next rod *4*. Fig. 4 below is a partial side elevation of the "trussed floor sleeper" of the patent.

*Fig.4.*

Fig. 2, below, is a broken cross-section at right angles to Fig. 1, and shows one form of construction disclosed, including the tile *9* and the shoulders *10* resting on the clips *5*.

*Fig.2.*

Claim 4 is the only one involved, and reads as follows:

"4. In fireproof flooring, a series of concrete joists containing reinforcing truss structures and hollow refractory centers between the trussed structures, substantially as described."

The claim thus covers three elements in combination: (1) The concrete joists; (2) reinforcing truss structures therein; (3) hollow refractory centers between the trussed structures.

The defendant's alleged infringement consists in their use, in their own building, of the so-called Gabriel trussed bar, as reinforcement for concrete in a tile and concrete floor. A section of the bar partly inclosed in the concrete is shown below.

The important defense is that the claim in suit, if so construed as to cover defendant's structure, is invalid in view of the prior art.

The theory of reinforcement of concrete is that the upper part of a beam under load receives compression, while the lower part is subject to tension; that concrete strongly resists compression stresses, but only slightly resists tension strains; steel, which has strong tensile resistance, when inserted below the neutral axis of the beam, reinforces the concrete by supplying the element which the latter lacks.

Buente was by no means a pioneer in the art of metal reinforced concrete (or cement) and tile floor construction. For example: As early as 1877, 24 years before the patent in suit, Hyatt (British, No. 289) disclosed metal-reinforced cement or concrete beams supplemented by hollow tile construction, capable of being made either in factory or in place. Lee (1894, No. 522,426) showed a floor "formed of tile blocks cemented together and tension rods cemented in the base of the floor." This general form of construction was extensively commercially manufactured previous to Buente. Crawford (1899, No. 621,446) showed a metal joist in the form of an I-beam embodied in concrete, with hollow tile between the joists, surrounded by concrete except on the lower side of the beam. McCarthy (1891, No. 461,960) had disclosed, in connection with tile construction, wire tension supports inbedded in concrete, although not as a part of the joists.

Nor was metal reinforcement in truss form unknown when Buente entered the field. The familiar theory of the truss is that the tension

member, or tie beam, is hung or "trussed" from the upper or compression member, whereby the compression strain is communicated in part to the (lower) tension member.

To say nothing of metal reinforcements of arch and truss form in bridge and allied arts, or of Hyatt's formation of metal reinforcement for concrete beams, Waite (1898, No. 606,696) had disclosed in a beam construction for buildings a metal reinforcement in the form of a complete truss, as shown by the figure below, in which $a$ represents concrete or other similar element, $c$ and $c'$ respectively the upper and lower metallic chords, and $d$ metal members connecting the top and bottom chords.

We think the triangular web construction of the tying members, in connection with the upper and lower chords, effects a true truss. However, it is perhaps enough to say that one of complainant's experts admits that it was not new at the date of the patents either to Waite or to Buente to reinforce concrete joists with complete trusses.

Complainant insists, however, that the reinforcement of the Buente patent is not a complete truss, but only a part truss, and that Buente was the first to suggest part-truss reinforcing structures in concrete joists, supporting hollow tile or refractory centers. The argument that Buente's reinforcement was an incomplete rather than a complete truss rests upon the proposition that the wooden sleeper, although presumably intended not to be removed, but to be used as a connection for the superimposed floor, served only a temporary purpose as a truss element; that the concrete when in place effectively supplied the upper chord or compression member, and that the "truss structure" of the claim in suit means an incomplete truss, as distinguished from a "trussed structure" resulting from the union of the concrete and metal reinforcement. This argument lays stress upon the statement in the specification that "the trussed sleepers form temporary core joists which support the hollow centers while the concrete is applied," and that, "if the sleepers are burned, the metal plates or bars will transmit the strains from the diagonals to the concrete and hold the structure intact," and upon the fact that claim 4 omits the "sleeper" as a separate element, which is, however, contained as such in others of the claims.

Assuming for the purpose of argument only that this contention is correct (and in the face of serious doubts, at least), we find, however, that part or incomplete trusses were not new in the art at the time of the Buente patent in suit. Devices of this general nature are, we think, found in Melber (1900, No. 660,508), which shows upper and lower tension rods, and diagonally disposed rods, all imbedded in the cement or concrete construction for the purpose of taking up the horizontal, vertical, and resultant sheering strains, respectively; the ends of the

diagonal rods being unattached to the tension rods (Fig. 7 being here reproduced); also in Hennebique (1898, No. 611,907), whose U-shaped

stirrups (which happens to be the name Gabriel gives to his wire loops) imbedded in the concrete connect the "chord of tension" formed by the horizontal bars with the "chord of compression" formed by the beton, thus playing "in the joists of strengthened beton the part which the suspension rods play in the trussing of metallic girders." Thus, in both Melber and Hennebique, the concrete is needed to complete the truss effect.

We therefore find in the specific prior art each element of the claim in suit, viz.: The concrete joists; the reinforcing metal truss structures; the hollow refractory members between the joists. True, unless Hyatt shows essentially a truss (as we think he does), we find in none of the references all of the three elements here involved. For example, while Lee and Crawford have tile and metal-reinforced concrete, the reinforcement is not in truss form; and while Waite and Melber have trussed reinforced concrete beams, they have no tile members. Hyatt, however, shows the tile and concrete, reinforced as stated.

We find it unnecessary to consider the effect of an earlier issued patent to Buente, originally included in the present suit but later withdrawn.

No light upon this question of invention is afforded by favorable public reception and use; for the conception of the patent in suit was impracticable commercially, as the floor beam, unless made expensively strong, is too weak to sustain (without deflection) the weight of the concrete during construction and thus to dispense with the centering, and the Buente truss seems never to have been used. The patent was purchased by complainant but a few months before beginning this suit.

In view of the prior art, the claim is, in our opinion, void, unless at least restricted to the form shown in the description of the specifications illustrated by the drawings of the patent. Duff v. Sterling Pump Co., 107 U. S. 636, 639, 2 Sup. Ct. 487, 27 L. Ed. 517; D'Arcy v. Staples (C. C. A. 6) 161 Fed. 733, 738, 88 C. C. A. 606; D'Arcy v. Murray, 161 Fed. 352, 354, 88 C. C. A. 364. So limited, the defendant's device does not in our opinion infringe the Buente patent. The device of that patent (construed most favorably to complainant's construction) and the device of defendant are wholly unlike, except as each has a metal tension member with metal reinforcement radiating therefrom.

The Kahn patent in suit, as already said, relates to a combined steel and concrete beam. The stated objects of the invention are: (1) "To provide for a longitudinal tension bar for said beam, supplemented with washers or deformations to insure better contact with the concrete body and to prevent stripping"; and (2) "to construct the main tension bar of uniform cross-section," to prevent waste of material, and to enable the use of a greater or less number of washers as desired. For the

purpose of holding the washers securely in position, the bar is upset or distorted on each side of the washer, after the same is put on the tension bar, by squeezing a portion of the bar out radially, so as to form a lug or ear on each side of the washer. The latter "may extend perpendicularly to the main longitudinal beam or may be inclined obliquely thereto." Fig. 6 below shows the obliquely inclined form. The claims in suit are Nos. 3, 4, and 10, which are printed in the margin.[1]

The defense is substantially the same as made to the Buente patent.

In view of the prior art, there was nothing novel in the mere idea of a metal tension bar with projections therefrom, either vertical or oblique, for binding and preventing stripping. The part-truss reinforcing structures to which reference has been made show the general idea involved in a bar so equipped. Kahn himself, by his patent of August 18, 1903 (No. 736,602), had shown a tension bar with arms projecting obliquely therefrom and fastened rigidly thereto. In a later patent of February 9, 1904 (No. 751,921, originally included in this suit, but subsequently withdrawn), Kahn showed a tension bar with rigidly attached and laterally extending arms formed by striking up portions of the web running along the two opposite sides of the main bar. Complainant's commercial structure employs this bar of the second Kahn patent last referred to. Nor were washers on or deformations of the tension bar new, for the purpose of getting a better grip on the concrete. Hyatt shows both a "washer" on a bolt projecting from the rod and a "stop" on the rod. It is evident that whatever patentable novelty resides in the patent in suit is to be found in the specific method of attaching the washers or arms to the tension bar. It seems clear that defendant has not adopted Kahn's specific method, which is all we think the patent covers.

Defendant's construction consists of wire clips wound around a bar originally constructed with deformations. These loops are not the "perforated members strung upon the bar" described in the fourth claim. While the deformation of the tension member naturally has some effect in keeping the wire loops in place, it does not completely

[1] 3. In a beam, the combination of a longitudinally-disposed tension member, of auxiliary pieces placed upon said member at points intermediate its ends and secured in position by deformation of the member without varying its cross-sectional area, and a beam of plastic material surrounding said tension member, the tension member being below the neutral axis of the beam.

4. In a metallic reinforcement for concrete, the combination of a metallic bar longitudinally disposed, of auxiliary perforated members strung upon the bar and secured in place, said auxiliary members being inclined in opposite directions from the middle of said bar.

10. In a metal reinforcement for concrete, the combination of a tension member, of a plurality of auxiliary members placed upon the tension member intermediate its ends, said auxiliary members having arms projecting laterally from one side, the cross-section of said tension member being changed to form shoulders for the support of said auxiliary members.

effect that result; and the manner of their attaching does not bring them within the meaning of the third claim. The patent cannot be construed broadly enough, in view of the prior art, to include defendant's method of construction as an infringement of claim 10. In our opinion, defendant's device is not within the letter or spirit of the Kahn patent in suit, as limited by the prior art.

The decree of the District Court is accordingly affirmed, with costs.