## VANDENBURGH v. TRUSCON STEEL CO. *

**(Circuit Court of Appeals, Sixth Circuit. January 9, 1922.)**

**No. 3587.**

1. **Patents ☞328—Reissue 14,182, for reinforced concrete construction, held invalid as too broad as to one claim and not infringed as to another.**

    The Vandenburgh reissue patent, No. 14,182 (original No. 841,741), for reinforced concrete construction, claim 1, *held* invalid, as too broad. Claim 3, if conceded validity, as limited by the prior art, *held* not infringed.

2. **Patents ☞324(5)—Finding by trial court as to prior date of invention presumptively correct.**

    The burden rests on a complainant to establish an asserted earlier date of invention to the satisfaction of the court, and the conclusion of the trial court on such question of fact must be accepted by the appellate court, unless the evidence decidedly preponderates against it.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by George E. Vandenburgh against the Truscon Steel Company. Decree for defendant, and complainant appeals. Affirmed.

Carlos P. Griffin, of San Francisco, Cal., for appellant.

W. F. Guthrie, of Youngstown, Ohio (E. N. Pagelsen, of Detroit, Mich., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of claims 1 and 3 of reissued patent No. 14,182 (August 15, 1916), to Vandenburgh. The original patent, No. 841,741, was issued January 22, 1907. The application for reissue was filed July 1, 1916. The invention relates generally to reinforced concrete construction. Its prominently stated specific object is to "provide a reinforcing bar with one or more spirally disposed coils secured to the bar, so as to provide an extended area of contact adapted to resist strain longitudinally and laterally on the bar, and to form a truss within the body of concrete," etc. As a preferred means of securing the coils to the bar the specification discloses "a series of kerfs in one face of the bar inclined away from the center of the bar toward the opposite ends thereof," the coils being "seated within these kerfs and held therein by means of the integral spurs,

---

which are forced downward upon the coils when inserted and permanently retain them in position." The specifications, considered in connection with the drawings, plainly show an integral spur overlapping the kerf, which when forced downward upon the coils holds them rigidly in position. Claims 1 and 3 read as follows:

"1. A concrete reinforcing consisting of a bar having a plurality of integral spurs and a spiral coil permanently secured thereto, by having the spurs bent down on the several coils, the coils extending beyond and free of the bar at the opposite side therefrom to the securing point."

"3. A reinforcing bar provided upon one edge with a series of kerfs each having an integral overlapping spur, and a coil disposed in said kerfs, each convolution thereof being retained beneath one of said spurs."

The defenses are invalidity of the reissue, lack of invention, and noninfringement. The District Court held claim 1 invalid as too broad, and claim 3 void for lack of patentable novelty, if construed broadly enough to embrace defendant's structure. The appeal is from a decree dismissing the bill.

[1] The District Court was plainly right in holding claim 1 invalid. As will later appear, the only novelty in plaintiff's conception is in the specific method of attaching the coils to the bar by kerfs therein and integral spurs rigidly securing the coils within the kerfs. The claims of the original patent, which were replaced by claims 1 and 2 of the reissue, in terms call for a rigid fastening. The omission of the requirement of rigidity in claims 1 and 2 was apparently intended to cover the feature of collapsibility found in later devices. Claim 1 of the reissue is thus unwarrantably broad. The same conclusion has been reached by the Circuit Courts of Appeals of both the Second [1] and Third [2] Circuits. Claim 3 of the reissue differs from the third claim of the original patent only in the substitution in the reissue of the word "edge" for the word "end" in the original. This is plainly merely a correction of a clerical error. It thus becomes unnecessary to give further consideration to the question of the validity of the reissue.

[2] The real date of plaintiff's invention is more or less material in determining what is prior art as related to invention. Plaintiff's original application was filed May 9, 1906. He attempted to carry the actual date of his invention back to 1903, and offered some testimony tending to show such earlier invention date. The trial judge held the testimony not sufficient to establish such earlier date. We cannot disturb this conclusion. The evidence consisted solely of the oral testimony of plaintiff and another witness, taken in open court. Under well-settled rules, the burden rested heavily upon plaintiff to establish the fact of the asserted earlier date of invention to the satisfaction of the court—whether or not such satisfaction is required to be beyond a reasonable doubt. St. Paul Plow Works v. Starling, 140 U. S., 184, 198, 11 Sup. Ct. 803, 35 L. Ed. 404; Clark Co. v. Willimantic Co., 140 U. S. 481, 492, 11 Sup. Ct. 846, 35 L. Ed. 521; Moline v. Rock

---

[1] Vandenburgh v. Concrete Steel Co., 258 Fed. 143, 169 C. C. A. 138.

[2] Vandenburgh v. Electric Welding Co. (C. C. A.) 263 Fed. 95.

Island (C. C. A. 7) 212 Fed. 727, 732, 129 C. C. A. 337; Barber v. Otis (C. C. A. 2) 271 Fed. 171, 180. The question presented was one of fact only, depending upon the weight to be given this oral testimony, and the trial court's conclusion thereon must be accepted here, unless the evidence decidedly preponderates against it. Pugh v. Snodgrass (C. C. A. 6) 209 Fed. 325. Assuming that we are at liberty, upon this record,[3] to consider this testimony, it is enough to say that the evidence does not preponderate against the conclusion of the trial judge.

Turning to claim 3: The art of steel-reinforced concrete construction generally was highly developed before Vandenburgh entered the field. It had been applied, not only to the construction of bridges, spandrel walls, dock walls, retaining walls, and fireproof floor construction, but specifically to beam, girder, and column construction in manufacturing and other buildings.[4] The art, generally speaking, was already old and crowded, although the more extensive and rapid use of metal-reinforced concrete came a little later. Truss reinforcement of concrete beams was also old, through the use of radially disposed projections from the tension member (either perpendicularly or obliquely thereto), as well as otherwise. See Trussed Concrete Steel Co. v. Goldberg (C. C. A. 6) 222 Fed. 506, 509 et seq. 138 C. C. A. 106. The art with which we are here concerned relates to that form of column construction called "column hooping." While Vandenburgh's invention seems more specially adapted to beam and girder construction, it is declared by the specification to be applicable to column construction as well; and we shall treat the disclosure, not only as so applicable, but as intended to cover a plurality of vertical reinforcing or spacing members around and upon which steel reinforcement is wound in spiral form. Vandenburgh was not a pioneer in this field. Hyatt (by British patent, 1874) and Lee (also by British patent, in 1885) had disclosed iron bands looped spirally to reinforcing members, the spirals being riveted to each other or to the vertical reinforcement. Kiesserling (German patent, 1894) had disclosed columnar reinforcement by way of a series of loops attached to vertical members by square notches therein. Column hooping seems to have become active abroad about the year 1902, and in the United States about a year later, and in articles published in 1902 and 1904 column hooping was described and illustrated; the 1902 publication disclosing notches on the exterior faces of the supporting members to contain and hold the spirals. Considere (United States patent, 1904) disclosed a reinforcement consisting of longitudinal rods and "independent helicoidal coils of metal * * * surrounding the core and rods," the

---

[3] The testimony is not certified as settled and approved by the trial judge, as required by general equity rule 75 (b), 198 Fed. xl, 115 C. C. A. xl. It appears to have been merely stipulated by counsel.

[4] We may refer in this connection to the following decisions of this court: Ferro Concrete Steel Co. v. Concrete Steel Co., 206 Fed. 666, 124 C. C. A. 466; City of Akron v. Bone, 221 Fed. 944, 137 C. C. A. 514; Detroit Iron & Steel Co. v. Carey, 236 Fed. 924, 150 C. C. A. 186; Luten v. Whittier, 251 Fed. 590, 163 C. C. A. 584.

coils apparently not being attached to the longitudinal members, and the next year published his researches in connection with the use of "continuous helicoidal spirals." In March 1906, the Engineering News published an illustrated description of metal reinforcement for columns, showing spiral reinforcement retained in place upon the vertical members between projections from the surface thereof.

It is thus apparent that Vandenburgh's invention, at the best, consisted only in the method of attaching the spiral loop to the vertical or spacing member. As already said, his method of attachment was by means of a kerf cut at an angle inclined to the edge of the vertical or spacing member, which thereby created an overhanging spur integral with the upright; the hammering down of this kerf and spur making a rigid connection between the spiral and the upright. It is true that this particular method of attaching the loop to the upright was new as applied to the art of metal-reinforced concrete. But as already shown, continuous spirals in connection with spacer bars were old in that art. It was old in metal construction generally to use that method of fastening wires to uprights, as shown by Norwood (patent, 1896) in the connection of longitudinal parallel wires with the crossbars of sand screens, where "diagonal slots forming acute angle hooks" receive the wires; the hooks being "bent down to hold such wires in place." The same method had been disclosed for the fastening of fence wires to posts of cement construction; the attachment, of course, not being directly to the cement. We recognize that the use of diagonal kerf and overhanging spur method of connection in a nonanalogous art did not anticipate the combination claim in question; but we are not considering anticipation, but invention, and the prior art in question is thus not irrelevant. Day v. Mountain City Mill Co. (C. C. A. 6) 264 Fed. 963, 964, 965. The adaption of an inclined kerf and overhanging spur connection to the reinforced concrete art amounted only to a common mechanical expedient. Berger Mfg. Co. v. Trussed Steel Concrete Co. (C. C. A. 6) 257 Fed. 741, 169 C. C. A. 29.

The defendant does not use the diagonal kerf and overhanging spur. Its coil is located in a rectangular cut in the edge of the upright, there being thus no overhanging spur, and the coil is held in position by hammering or "peening" down the metal at the edges of the rectangular cut sufficiently to hold the coil in position, not rigidly but loosely enough to permit the collapsing of the structure for purposes of shipment. Defendant's method of fastening was also old in the metal construction art, being shown in Prescott & Bennett's 1891 sand screen patent. The patent in suit has been considered by the Circuit Courts of Appeals of the Second and Third Circuits. In the former (Vandenburgh v. Concrete Steel Co., supra) claim 3 was held to disclose invention and to be infringed by a construction which seems to be substantially similar to that involved here. In the Third Circuit (Vandenburgh v. Electric Welding Co., supra) claim 3 was held limited by the prior art to a bar with kerfs in which the attached coil is placed and a tongue or spur overlapping the kerf and holding the coil in place, and, as so limited, not infringed by a fastening consisting of a lip or clip struck up from the face of the spacing member.

We are not impressed that the advance in reinforced concrete construction is due in any substantial measure to Vandenburgh's contribution. Our conclusion is that, assuming for the purposes of this opinion that the claim in question involves some measure of invention, it is so narrow as to be practically limited to the specific method of fastening disclosed, and that it cannot be extended to cover defendant's method.

The decree of the District Court is accordingly affirmed.