## CITY OF DETROIT, MICH., v. KAHN et al.

Circuit Court of Appeals, Sixth Circuit.
November 18, 1927.

No. 4809.

Patents ⊜〰328—1,089,405, claims 1, 2, 6, 8, 10, 12-16, for reinforced concrete dock, held valid.

Ferguson patent, No. 1,089,405, claims 1, 2, 6, 8, 10, 12-16, for reinforced concrete dock or pier, *held* valid.

Appeal from the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Patent infringement suit by Isaac T. Kahn and others against the City of Detroit, Mich. Decree for plaintiffs, and defendant appeals. Affirmed.

Walter Barlow, of Detroit, Mich., for appellant.

J. King Harness, of Detroit, Mich., and

Albert Lynn Lawrence, of Cleveland, Ohio, for appellees.

Before DENISON, KNAPPEN, and MOORMAN, Circuit Judges.

KNAPPEN, Circuit Judge. This is a suit for infringement of United States patent No. 1,089,405, March 10, 1914, to Ferguson, on reinforced concrete dock or pier. The plaintiff Dock & Terminal Engineering Company has an exclusive license under the patent. The other plaintiffs are the owners thereof. This appeal is from a decree of the District Court finding the patent valid and infringed and awarding injunction and accounting.

In Detroit Iron & Steel Co. v. Carey, 236 F. 924, this court held this patent valid and infringed. That decision (which involved claims 4, 6, 10, 11, 12, and 16), if followed, would require an affirmance of the decree now before us. Defendant asserts, however, that in the Carey Case "the same defense was not made by the defendant therein as is made by the defendant in the case at bar"; that a defense of absolute invalidity of the patent "was not urged before the court in that case"; that the patent is "an invalid invention in reinforced concrete dock and pier construction in view of the prior state of the art"; that it is "void for anticipation," and, moreover, void on its face "as a matter of law, for lack of invention in reinforced concrete and pier construction, *as no reinforced concrete dock and pier construction is patentable* under the patent laws of this country." This sweeping proposition is supplemented by the statement that the principles of Ferguson's patent in suit "were known in England, France, Germany, and Holland, and were described in printed publications in said foreign countries, more than two years prior to his alleged invention and discovery thereof, and more than two years before his application for letters patent thereon."

The result in the Carey suit is apparently thought to be due to lack of understanding, when that case was heard, of the then progress of the art of reinforced concrete construction. In support of these contentions of fact the defendant has introduced on the hearing of *the instant case* a large number of exhibits, by way of pictures of reinforced concrete dam, dock, pier, and wharf construction, and publications from which the same were taken, the following being among the ones so represented:

A wharf constructed in France in 1883 and 1884, resting on piles capped at the face with a timber over which concrete is placed, on top of which a masonry wall was built, and above that a timber platform covered with dry rubble, the construction being tied back to the shore by angle ties to anchor blocks buried in the rear of the whole structure. A description of the dock was published in a French, an English, and a Holland publication. This is claimed to be typical of the platform type of wharf. More or less similar platform wharves were shown to have been constructed in Rotterdam, Holland, and described in Holland publications in 1884 or 1885; also in 1890 and 1891. Also the use in 1890 and 1891 of concrete caissons floated to and rested upon the piles. Also another wooden platform dock constructed in Emden, and described in a printed publication in 1889–1890. Also a dock constructed at Southampton, England, under the Hennebique patent system, having a reinforced concrete front surface and a concrete slab resting on piles, a reinforced concrete floor, described in printed publication in 1898. Also a wall constructed in Ghent on the Hennebique system, and described in 1901 or 1902 in a foreign publication. Also a bridge abutment constructed in Germany, and described in a German publication in 1907, showing a construction of concrete with a platform resting upon piles battered in both directions to furnish rigidity. Also a description in a French publication of 1906 of a dock built in Chile in that year. Also an English publication of November, 1906, showing the ordinary deck type of concrete wharf built at Rochester, England, after the Hennebique system, in which reinforced concrete has replaced wooden framing, the face of the dock also being of reinforced concrete.

There were also introduced American publications of the Engineering Record and/or Engineering News, ranging from 1904 to 1906, describing a wharf at New Orleans, repairs to the Rotterdam construction, etc. Also a description (1897) of the timber platform of the Delaware bank bulkhead at Philadelphia. Also a description in the Engineers' Pocketbook of Reinforced Concrete describing a retaining wall built in 1900 for the Paris Exposition, together with a description of the Delaware bulkhead, supra. Also a description of a dock at Caracas, Venezuela, begun in 1885 and finished in 1897. We have not referred to each of the constructions and publications put in evidence, but have mentioned the most important, and enough to show that no anticipation of the Ferguson patent has been shown. Indeed, lack of anticipation is now admitted. The utmost which could plausibly be claimed for

defendant's showing is that for the most part, at least, each element of the Ferguson invention is *separately* found in substance somewhere in the prior art.

That defendant misconceives the scope and effect of the decision in the Carey Case, 236 F. 924, seems plain. Ferguson's application was filed March 5, 1909. The date of his invention was, in the Carey Case, carried back to July 10, 1906 (page 930). The answer in that case definitely set up lack of novelty, alleging that the structures shown by the patent are substantially identical with the inventions disclosed in the prior art, citing the patent to Shaler (July 31, 1900) for concrete construction, the patent to Church (July 12, 1904) for concrete dam, the patent to Scofield (March 20, 1906, applied for February 20, 1905) for retaining wall, and the patent to Upson (December 1, 1908) for retaining wall. Prior use by the Cleveland Furnace Company was also set up, apparently on the theory, rejected by this court, that the two years' prior public use which would defeat the right to the patent was to be reckoned from the date of the renewal application, which was November 1, 1912; also prior publication by paper delivered before the American Society of Civil Engineers, and published in the transactions of that Society in 1910.

Upon the trial of the Carey Case, however, a large number of prior patents were introduced by the defendant, including Endicott (1892); Rich (1892), dry dock; Geisel (1896), concrete bridge; Stowell & Cunningham (1899, applied for 1897), on concrete and metal walls "such as retaining walls," etc.; Fielding (1900), concrete dam, retaining wall, breakwater, etc.; Shaler (1900), for reinforced concrete construction for bridges, retaining walls and other uses; Bone (1902), reinforced concrete retaining wall; Mouchel (1903), structures such as "wharves, quay walls," etc., showing piling, reinforced concrete casing, etc.; Church (1904), concrete dam; Church (1904), concrete retaining wall; McBean (1905), underground tunnel, embracing piling and concrete bed around the tops of the piles; Scofield (1906), concrete wall construction for retaining walls, such as sea walls, etc.; Davis (1906), retaining wall of hollow bricks or tiles, employing bituminous filling and concrete bracing; Upson (1908), retaining wall of reinforced concrete.

Defendant in the Carey Case also introduced an article published in Reinforced Concrete, second edition, 1905, containing "a general view showing the manner of constructing retaining walls with piling foundations," explaining and illustrating Mouchel's hollow piling, and referring to several types of Hennebique's arched bridges and their reinforcement and construction; also an article in Reinforced Concrete, third edition, 1906, describing more in detail Hennebique's arched bridges, as well as his corbels (buttresses) or cantilevers; also the manner of reinforcement for pipes and circular reservoirs; also an article in The Engineer, apparently October 19, 1906, devoted largely to "armored [reinforced] concrete" quay walls at Rotterdam, the opening paragraph of which reads:

"It is not too much to assert that all the great European powers are at the present time actively engaged in the execution of extensive engineering works connected with the construction, maintenance, reparation, and reconstruction of their more important ports, harbors, and maritime stations. One of the especial features to be noted with respect to these works is the large scale upon which the employment of armored concrete has become a regularly recognized building material. In no locality is this fact more apparent than in Rotterdam and its environs. It is now some years since Rotterdam, the second largest city and the commercial center of the Netherlands, has evinced its decided preference for this system of constructing new quay and dock walls, and rehabilitating old examples in need of such operations. Of late the approval of the armored concrete principle has become more marked, and its use more universal, owing to the successful results which have attended all previous attempts to establish its equality with, if not its superiority over, ordinary masonry."

The article contains "a brief account of one of the most recent instances of rebuilding quay walls at Rotterdam upon the armored concrete system," illustrating the rebuilt walls of the Schiekald quay there referred to and its mode of construction. Defendant in the Carey Case also introduced a drawing of the American Steel & Wire Company's docks (1906–1907), showing the piles and reinforced concrete mass construction.

All these prior patents, prior use and prior publications introduced in the Carey Case were considered by us. The opinion (page 931) in terms refers to several of these references, more than one of which are set up by defendant in the instant case. We agree with Judge Tuttle, who decided below the case before us, and whose decision in the Carey Case was affirmed by this court, that a study of the structures introduced in the instant case does not materially show a dif-

ferent state of the art than was recognized in the Carey Case. There is merely a greater number of references, none of which presents anything substantially new; in other words, the evidence is merely cumulative.

We see no merit in the proposition that all Ferguson has done is to substitute reinforced concrete for wood or metal as used in the old docks and bridges. In the opinion in the Carey Case (page 928) we thus stated the purpose and scope of the invention:

"The primary purpose of the invention is the construction of an integral reinforced concrete dock, supported primarily by piling driven below the water line, the reinforcing metallic elements to be so arranged as to sustain the various strains carried by it. A prominent feature is the reinforced concrete subfloor, which forms, with the dock wall, a continuous foundation for the dock, in which foundation the upper ends of the piles are imbedded, so distributing weight or shock over a series of piling. This subfloor is connected to a suitable shore anchorage, and is designed to carry, in whole or in part, the weights incident to the structure and its use, including filling or backing, as well as apparatus, cargoes, etc., and through this subfloor, below the dock level, are to be transmitted to the shore anchorage, wholly or partially, strains or shocks from the water side, thereby minimizing 'any tendency toward a displacement of the dock.' Economy in construction is also an object in view."

Claim 6 is fairly typical. It reads:

"6. In a concrete dock, the combination with rows of piles driven substantially to the water level, of metallic reinforcing members, extending across said piles, a concrete wall erected thereon, and embracing said reinforcing members within its base, additional reinforcing members embedded adjacent to the upper front and rear portions thereof in approximately a horizontal plane, whereby two rectangular reinforced beams are produced in effect, and a reinforced concrete floor associated therewith for supporting the backing, cargo and other load, substantially as set forth."

The claims call for a specific construction found nowhere in the prior art. They do not call merely for a concrete dock. In fact, we expressly said (page 931):

"Ferguson was not the first to devise a reinforced concrete structure resting upon piles having their heads surrounded by the reinforced concrete, nor to use bracing walls for strengthening the front wall. Reinforced concrete floors, as such, were not new. See Trussed Concrete Steel Co. v. Goldberg (C. C. A. 6) 222 F. 506, 138 C. C. A. 106. But neither the prior patents cited nor the prior drawings of or publications concerning dock or other structures disclose devices anticipating the claims in suit; nor do these references, in our judgment, so far suggest the salient and distinguishing features of Ferguson's conception as to deny the presence of invention in these claims."

And after distinguishing (pages 931–932) the Hennebique construction, the Schiekald quay wall, the American Steel & Wire Company's docks, and the Almirante (Panama) wharf, we said:

"As said by the District Judge, Ferguson, so far as appears from the record, was the first in this country to construct or design a wholly integral reinforced concrete dock not of mass construction. The history of the construction of the Cleveland Furnace Company's dock shows that more than 50 per cent. in cost was saved by the more open construction involved in the device of the patent. The weighted floor below dock level, integral with the entire dock structure in front of it, is one of its distinguishing and valuable features. The utility of the dock is clearly shown by the acceptance of the plans therefor by the Cleveland Furnace Company in 1906 over all competitors; by several months testing of a section built prior to the building of the complete dock; by defendant's selection of the dock prior to January 1, 1910; by its use thenceforward, and, yet again, by defendant's extension of the dock in 1913—the alleged infringement (after at least three years use of the original section) —by adding another section exactly like the one constructed by plaintiff's company."

No prior patent, structure, or publication has disclosed the invention of the patent in suit, as both here cited and elsewhere stated in the Carey opinion. In that opinion it was said (page 931) that "the absolute invalidity of the claims is, at most, but faintly asserted." Appellant's counsel construes this to mean that the judge writing the opinion realized that, if the defense of nonpatentability had been presented and urged before the court, "the decision of the court in that case would have been that the patent is invalid in view of the state of the prior art and related arts." The defendant's expert there testified, in effect, that in his opinion, in view of the prior art, claims 4, 6, and 10 are either void, or limited to the precise construction shown in the patent, and so not infringed by the defendant's dock; that the prior art cited by him showed the prominent elements of claim 11, although (apparently) not all in

one disclosure; that certain prior art contained all the elements of claim 12 "substantially as set forth"; and that all of the elements of claim 16, "and the combination thereof," are anticipated in the construction of certain wharf and dock structures mentioned. One chapter of the defendant's brief was headed: "Ferguson Not the Inventor of the Alleged Improvement. The Patent is Void because Subject-Matter Known to Cleveland Furnace Company and Others before Ferguson's Alleged Invention."

The history of the Carey Case, already given, shows counsel's misconception of the quoted sentence from the Carey opinion, which, unless it referred to the situation after the case had been fully tried, could only mean that "absolute anticipation" was but faintly asserted, and, in any event, does not sustain the construction which counsel puts upon it.

We have no doubt that the patent involves novelty and true invention. When that case was heard this court was not unfamiliar with the subject of reinforced concrete construction. It had decided several such cases, including Trussed Concrete Steel Co. v. Goldberg (C. C. A.) 222 F. 506, where we held the Buente patent (1901) for fireproof floor construction not infringed. We there recognized (page 508) that Buente was by no means a pioneer in the art of metal reinforced concrete and tile floor construction.

Defendant's counsel cite, as opposed to the decision in the instant case below, a line of decisions in other courts holding the Luten patent invalid. In Luten v. Whittier, 251 F. 590, decided by this court about a year and one-half after the Carey decision, in holding void for lack of invention Luten's patent (issued in 1907) for a reinforced concrete bridge, we said (page 596):

"Years before plaintiff applied for the patent in suit the theory of steel reinforcement of concrete, in that the latter resists compression strains strongly and tension strains only lightly, while steel has strong tensile resistance and so reinforces the concrete by supplying the element which the latter lacks, was well known, and standard practice had for years called for the metal reinforcement of concrete where weakest, and where subject to the severest tensile strain."

We there expressly stated that the Luten Case was "obviously distinguished from Detroit Iron & Steel Co. v. Carey, 236 F. 924." The Carey Case was also cited in the opinion of this court in Vandenburgh v. Truscon Steel Co., 277 F. at page 347.

It seems to us very clear that the Carey decision is not open to discredit. So far as we are advised, no court has criticized it. Petition for its review by certiorari was denied by the Supreme Court. 242 U. S. 649, 37 S. Ct. 242, 61 L. Ed. 545. The record in the instant case indicates that much dock construction has been had under the patent. Infringement is expressly admitted, if the patent is valid. The claims here in suit are 1, 2, 6, 8, 10, 12, 13, 14, 15, and 16.

Appellant's counsel cites several cases in other courts involving reinforced concrete construction, which are urged as opposed to the decision in the Carey Case. It seems to us that none of them are opposed to it in principle. If so, we should not feel justified in following them.

It follows from these views that the decision of the District Court should be affirmed.