DETROIT RY. & HARBOR TERMINALS v. FERGUSON et al.

No. 5330.

Circuit Court of Appeals, Sixth Circuit.

June 12, 1930.

W. J. Belknap, of Detroit, Mich., for appellant.

J. K. Harness, of Detroit, Mich. (Arthur W. Dickey and Harness, Dickey & Pierce, all of Detroit, Mich., on the brief), for appellee.

Before HICKS and HICKENLOOPER, Circuit Judges, and ANDERSON, District Judge.

HICKENLOOPER, Circuit Judge.

This is an action for infringement of patent No. 1,089,405, issued to W. S. Ferguson, March 10, 1914, for a reinforced concrete dock or pier. The District Court held claims 10, 12, and 16 infringed. Defendants appeal.

The patent has been before this court on two other occasions, upon both of which its validity was recognized and decree of infringement sustained. Detroit Iron & Steel Co. v. Carey (C. C. A.) 236 F. 924; City of Detroit v. Kahn et al. (C. C. A.) 22 F.(2d) 613. The claims in suit are quoted in the margin of the report of the Carey Case, and need not here be repeated. The first question for determination is whether the prior art as shown by the present record differs so materially from the prior art as shown in the other two records as would have required a different conclusion in either, had it there been presented. Otherwise the court will adhere to its previous decisions upon principles of stare decisis. Payette Neckwear Co. v. Franc-Strohmenger & Cowan, Inc., 39 F. (2d) 899 (C. C. A. 6, April 21, 1930).

None of the new evidence is urged upon us as showing anticipation, prior use, or publication of the complete combination covered by the claims. As was said of similar evidence in our former decisions, it is to be classified either as disclosing a design for retaining walls, not extending over the water nor presenting the problems of dock construction (examples being the Merwede Canal Wall and the Puget Sound quay wall, both built in 1904, and the Antwerp dock, subject to indefinite publication in February, 1906), or as structures of the mass concrete type, such as the dock at Wallabout Basin, the Champlain Canal approaches, and the Peavey dock at Duluth. Structures of both types

were considered by the court in our previous opinions, were there rejected as invalidating the patent, and it seems manifest that the very purpose and utility of the Ferguson patent was the avoidance of the necessity of these massive structures, on the one hand, and the adaptation of the elements of the land structures to dock construction, on the other. We do not again inquire into the question whether it required more than a high degree of mechanical and engineering skill for Ferguson to design his dock, if he be assumed, as he must be, to have had knowledge of these prior art structures. On both previous occasions this court held that invention was disclosed by the combination of elements, all old in the art, for the purpose of the construction of a more efficient and useful dock. We accept this finding, conclude that a different decision would not have been required had the new evidence in this record been before the court on the previous occasions, and turn to the question of infringement, which is the chief question here involved.

As we now read the specifications and claims, in view of the prior art, Ferguson made practical use of reinforcement of concrete to construct a lighter, stronger dock of the subfloor and platform type. On the outer side, running parallel with the shore line, he designed a huge girder of reinforced concrete, the lower flange resting longitudinally upon a series of piles, the upper ends of which are imbedded in the concrete. The preferred form also shows the use of reinforced concrete beams extending shoreward and longitudinally of the dock in the construction of the subfloor. The reinforcement of this beam construction of the subfloor is described in some of the claims as tension and shear members, and the entire structure is described in the specifications as comprising a system of reinforced beams or girders horizontally and vertically positioned, including a reinforced girder floor; but the patentee also says that "many of the members specifically mentioned in the reinforcing scheme described in connection with the dock invented by me, may be dispensed with, or modified to meet varying conditions of service," thus emphasizing the fact that such beam and girder construction is but the preferred form.

Concrete was known to offer high resistance to compression but to have relatively low tensile strength. The reinforcement of the subfloor over the heads of the piles must be sufficient to resist the shear and tension strains produced by the load above. The earth fill above the subfloor, the pavement above that, and the weight of cargo and of unloading machinery, railway cars, etc., also tend to overturn the outside wall. The jar of landing vessels tends to force the wall inward. To counteract these forces and to distribute them over a large area, and yet to avoid mass construction and produce a dock of maximum strength and durability, Ferguson utilized transverse bracing walls of concrete, resting upon the subfloor and offering resistance to the compression strains and jars from landing vessels, and reinforced from the subfloor to near the top of the outside girder to resist the tension strain and hold the outer wall in place. In thus utilizing these known practices to avoid the necessity of mass construction in docks, and still produce a structure of great strength and durability, invention was held to lie.

In detail, the defendant's structure departs somewhat from the preferred form shown in the patent, and reverts toward greater mass construction. The supporting piles are not imbedded in the concrete of the subfloor nor the front wall; the reinforcement of the subfloor is of the mattress type, rather than in beam or girder form; the piles are closer together than is required by Ferguson's preferred form, the reinforcement is less, and the concrete subfloor is of necessity thicker. Instead of transverse bracing walls placed at intervals, the front wall is thickened at its base, shoreward, and the diagonal reinforcement placed by Ferguson in these transverse walls and providing tensile strength to resist the pressure of earth fill and superimposed load is also used by the defendant, but it runs between a point slightly above the middle line of the front wall to the longitudinal reinforcement of the subfloor, instead of from very near the top of such wall to a point further shoreward; and, while Ferguson's preferred form of shore anchorage consists of stay piles, or other solid anchorage erected on shore, and reinforcing means connecting the wall and subfloor firmly with such anchorage, the defendant's dock is anchored shoreward by batter-piles at intervals longitudinally, which piles are imbedded in the concrete of the subfloor. These batter-piles are constructed toward the shoreward side, and effectively hold the structure from sliding into the river. It is also contended that defendant's dock is not an integral monolithic whole, in that the concrete subfloor is separated from the piling by a two-inch wooden floor, and the subfloor of concrete was poured before the front wall, producing a theoretical line of separation.

These differences, it is alleged, avoid infringement.

We are not impressed with the contentions either that the defendant's dock is an example of reversion to the mass construction of the prior art, or that the structural differences are so radical a departure from the patent as to avoid infringement. Practically and functionally the defendant's dock is a monolithic whole. The vertical and diagonal reinforcement firmly unites the front wall and subfloor, and the weight of the whole structure, as well as the tie-rods driven into the piles and extending into the subfloor, as firmly holds such piles integral with the subfloor as if they were imbedded in it. With the placing of the piles closer together in series, and the use of heavier concrete for the subfloor, lighter reinforcement was required, but this reinforcement provided shear or tension members in the subfloor, although to a less pronounced degree. Although the subfloor may properly be said not to employ a system of distinctly beam construction, it is to be noted that this preferred form is not an element of the claims in suit. The batter-piles securely anchor the whole to the shore. Lastly, while the defendant has not adopted the separate transverse walls, or counterforts, which play so important a part in the Ferguson design, the widening of the base of the front wall and the use of reinforcement, tying in with the reinforcement of the subfloor, to resist and avoid over-toppling of such wall, is in function and effect the equivalent of the transverse bracing walls. The greater transverse width on the front wall offers the same increased resistance to compression strains that is afforded by the transverse walls of Ferguson, while the diagonal reinforcement provides the same tensile strength. So far as resistance to both compression and tensile strains is concerned, the transversely reinforced fillet along the base of this front wall is in all respects the mechanical equivalent of a close series or multiplication of transverse walls, each centering at one of the diagonal reinforcements.

To specifically apply but one of the claims (claim 12): "In a reinforced concrete dock," the dock is here constructed of concrete reinforced with steel, for whatever purpose and whether of the mat type or beam design; "the combination with suitable sub-surface supporting means," the piles; "of a load-supporting concrete floor with tension and shear members therein bridging the supporting means," this is the reinforcement of the subfloor bridging the supporting piles; "a longitudinal concrete wall integral with said floor," as has been stated, the longitudinal front wall has been made integral by tying the two firmly together with reinforcement; "and reinforcing members within the upper and lower portions thereof," these are present; "concrete bracing walls disposed at intervals between said wall and floor and integral with the structure thereof, whereby the concrete is availed of for compression strains," this element is found in defendant's fillet with its diagonal reinforcing tension members and the concrete immediately adjacent on either side of each such members; "suitable shore anchorage," the batter-piles; "and connecting means uniting said dock therewith," these are the pockets of the concrete subfloor in which the batter-piles are firmly imbedded.

It is urged, however, that there has been a substantial departure from the principle of Ferguson's invention, and that it is not sufficient that the defendant be brought within the letter of the claims if the defendant's dock is constructed by employing different means, although to accomplish substantially the same result. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 18 S. Ct. 707, 42 L. Ed. 1136; Kelsey Wheel Co. v. Universal Rim Co., 296 F. 616 (C. C. A. 6); Edwards Mfg. Co. v. National Fireworks Distributing Co., 272 F. 23, 26 (C. C. A. 6); McCallum v. Pittsburgh & Cleveland Coal Co., 268 F. 831, 836 (C. C. A. 6). The answer to this contention is, we think, that the defendant's dock is not constructed upon a different principle, nor does it accomplish the desired end by substantially different means. On the contrary, practically the same end is accomplished by employment of substantially the same means, functioning in identical manner. Modifications of design which have been adopted were only such as involved change in detail and in greater or less dependence, relatively, upon one or another feature, without the omission of any particular element or the function performed by it. This is universally recognized as constituting infringement. Gordon Form Lathe Co. v. Walcott Machine Co., 32 F.(2d) 55 (C. C. A. 6).

Accepting our former decisions as establishing the validity of the patent, and finding in defendant's structure each element of the combination covered by the claims in suit, or its full mechanical equivalent, and not considering it material to the question here involved whether the defendant's dock possesses all of the supposed advantages and utility of Ferguson's preferred form, such as full

economy of construction and a doubtful resiliency, the decree of infringement must be affirmed.