TAGGART BAKING CO. v. GREEN et al.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1919. Rehearing Denied March 4, 1919.)

No. 2520.

1. PATENTS ⬅102—APPLICATION—VERIFICATION OF CLAIMS.
    Claims 40 and 41 of the Green patent, No. 1,180,030, inserted after the original application on request of the examiner for the purpose of interference, were within the drawings and specifications of the original application, so that no additional verification thereto was necessary.

2. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—BISCUIT CUTTER.
    The Green patent, No. 1,180,030, claims 29, 30, 40–45, inclusive, for a biscuit cutter, especially relating to pan carrier with automatic skip, which could be adjusted without stopping the machine, held valid, as disclosing invention and infringed.

Appeal from the District Court of the United States for the District of Indiana.

Suit by Thomas L. Green and another against the Taggart Baking Company for infringement of patent. Decree for complainants, and defendant appeals. Affirmed.

James Love Hopkins, of St. Louis, Mo., for appellant.

Laurence A. Janney and Osgood H. Dowell, both of Chicago, Ill., for appellees.

Before BAKER, MACK, and EVANS, Circuit Judges.

EVAN. A. EVANS, Circuit Judge. The patent in suit deals with a complicated biscuit cutting machine, claims 29, 30, 40–45, inclusive, being involved. The defenses to all claims are invalidity and noninfringement. An additional defense is made to claims 40 and 41, appellant contending that these claims were improperly allowed: (a) Because applicant's oath thereto is lacking; (b) because they are not supported by the specifications. These objections will be first considered.

[1] Green's application was filed February 20, 1909, but patent was not issued until April 18, 1916. During that time Allison and Pinkney filed application for patent (August 3, 1912) and letters patent were issued September 29, 1914, the subject-matter being a cracker-cutting machine. Its claims one and two are the same as claims 40 and 41. Originally, Green asked for the allowance of a claim numbered 56, covering generally the same matter as claims 40 and 41. Upon an interference being declared, Green was required to present his interfering claim or claims in the identical words of Allison and Pinkney. Patentee therefore inserted claims 40 and 41, corresponding to claims 1 and 2 of Allison and Pinkney. His statement in support thereof was duly sworn to, and the Patent Office ruling went to Green. Allison and Pinkney appealed to the Court of Appeals of the District of Columbia, and their appeal was later dismissed.

An examination of the drawings and the description as well as the proceedings in the Patent Office and other evidence convince us that a sufficient disclosure to support these claims 40 and 41 appeared in the original application, that no additional verification was necessary, and the interference proceeding was properly decided in Green's favor.

Since this appeal was argued our attention has been called to a decision of the United States District Court for the Eastern District of Tennessee in a case entitled J. H. Day Co. v. Mountain City Mills Co. et al., 257 Fed. 561. Complainant in that case was the manufacturer of the machine used by the Taggart Baking Company in the instant suit, while defendant was the user of the machine manufactured by appellee. The Allison and Pinkney patent, heretofore referred to, was under consideration and the judge in disposing of the suit said:

"Allison and Pinkney patent, No. 1,112,184. The proof was, in my opinion, beyond reasonable doubt that Allison and Pinkney were not the first and original inventors of the differential pan-skip mechanism disclosed in claims 1 and 2 of the Allison and Pinkney patent on improvements in cracker-cutting machine; that the first and original inventor thereof was Thomas L. Green, * * * who. as early as 1909 invented this mechanism, constructed a machine, and successfully operated it at Cardiff, Wales. The result thus reached is in accordance with the action of the Patent Office in awarding the claims in suit of the Allison and Pinkney patent to Green in the interference proceeding," etc.

It also appears that, after the ruling of the Patent Office in the interference proceeding, Allison and Pinkney filed a disclaimer in the Patent Office, but limited in its scope. We therefore reject appellant's special attack upon these two claims.

[2] *Invention.*—Machines such as described in the patent are used in the manufacture of biscuits and crackers. Speed and avoidance of waste are their chief objects. In other words, bakers require a machine that will turn out as many biscuits as possible, all of any type being as nearly uniform as possible.

The patent citations contain many illustrations of machines designed to accomplish this result, some of which have been used with more or less success. Green attacked the problem by providing means to avoid stops and delays for adjustments.

The ordinary biscuit cutting machine requires a continuous sheet of dough, carried upon a driving apron under a reciprocating cutter which at every reciprocation cuts out a row of biscuits. As the apron advances, the scraps are dropped into a scrap carrier, and the biscuits are conveyed by the apron to a point called the delivery end of the apron, and there dropped or deposited into pans which are successively moved under the apron, each pan coming into place immediately upon its predecessor being filled.

It is with the operation of this pan carrier that the patent in suit primarily deals. The pan carrier advances each pan at a regular rate and receives the successively dropped rows of biscuits until the pan is full. A momentarily accelerated movement of the pan carrier then occurs so that the succeeding pan is brought into position to receive the succeeding row of biscuits. This acceleration of motion is termed by the witnesses, "skipping." It is highly important that the skipping should occur at the right moment; otherwise, there will be "crippled" biscuits, resulting in waste, etc.

Patentee well says that the capacity of a machine depends upon the speed and accuracy of accomplishing the panning operation.

"For the biscuits must not pile up; they should be produced and delivered no faster than the pans can take them, and they should be panned properly to avoid cripples and wastes."

Green's machine employs a continuous pan feed, and counsel claims that it was the first high speed continuously operating machine capable of panning the entire product known to the art. Its asserted novel features are:

(a) Continuous pan feed, with a positive gear transmission and an automatic skip means in the transmission.

(b) Its automatic pan skip is provided with means for adjusting the skip relative to the pans without stopping the machine.

(c) The use of speed change gears in the pan feed transmissions, so as to adjust the panning speed to the rate of production of variously sized biscuits.

If Green's machine lives up to the asserted claims of counsel, there is no question of invention involved, and we need only consider infringement, and whether the claims in the patent cover the novelty asserted, and no more.

Appellant, however, denies that Green is the first to produce a machine having an automatic pan skip with means for adjusting the skip relative to the pan without stopping the machine, and cites Appleton's Cyclopædia of Applied Mechanics, volume 1, pages 7–10, patent to Bleile, No. 863,349, patents to Carlson, No. 661,008 and No. 670,383, and to Ward, No. 865,461, and others.

While we may well take notice of actual disclosure appearing in Appleton's Cyclopædia of Applied Mechanics, published in 1899, the particular pages dealing with bread and biscuit machinery, we cannot agree with appellant in the conclusion that a machine anticipating Green's machine is disclosed. It is conceded that there were intermittent feed types of pan carriers with a ratchet and pawl drive in existence prior to 1909. There were also machines having continuous dough feed arrangements. There also may have been a machine in existence capable of pan skipping and employing an intermittent pan feed. But we conclude that the article referred to in the Cyclopædia referred to a continuous sheet of dough fed to the rollers, and not to a machine for a continuous pan feed.

The Bleile patent discloses a pan-skipping device for a biscuit machine, but it is clear to us that no machine is described, and patentee did not intend to describe a machine, wherein a readjustment of the position of the pans with the dough might occur while the pan carrier machinery was in motion. Bleile says in his specifications:

"The face of the accelerating device is made the full width of the pulley face in order to insure the friction clutch between the parts, and the length of time this clutch shall continue can be very readily and easily adjusted by the set screws 27 to correspond with the space between the rear edge of one pan and the front edge of the next succeeding pan."

Of course, it is apparent that this set screw, when adjusted, may well have the effect of registering the skip with the pans; but it utterly fails to provide the means Green claims to have provided, namely, an automatic pan skip with means for adjusting the skip relative to the pans without stopping the machine. The set screw was not adjustable when the machine was in motion. We likewise think Green's claim that Bleile's machine did not possess any speed change gears is well taken.

Ward's machine does not possess a pan-skip mechanism, within the meaning of the word "skip" as here used, nor is the speed of the carrier relatively adjustable while the machine is in motion. Carlson's patent differs from the machine in question for the added reason that the pan feed transmission is not provided with speed change gears.

Appellant likewise confidently relies upon a machine known as the Cincinnati machine. Green charges that this machine is a fiction. The court heard the testimony and was in a better position than we to determine the weight to be given to the testimony bearing upon this machine. The sole witness who testified concerning it stated that it had been installed some 13 or 14 years previously, that it had remained complete for about a year, and that some parts had been taken off "because the witness had a man who did not know how to run and operate the machine. He got used to running the machine without

any pawls but one." After a lapse of many years, and shortly before this suit was tried, parts were put back or attached, and defendant's expert witness examined it, testifying on direct examination to its complete anticipation of Green's machine. There is certain testimony tending to show that this machine was not adapted to skipping, because of the absence of lugs on the carrier chains. Nor does the statement of the original operator coincide with the theory of the expert as to the purpose or use of a hand wheel by which the carrier was relatively adjusted forward or backward while in motion. While witness seemed to recognize the presence of a hand wheel such as was referred to by the expert, it is doubtful if it served or was capable of serving the purpose ascribed to it by the expert.

We cannot say upon this testimony the court erred in not recognizing this machine as an anticipation of the claims of the present patent.

Claim 29 probably best describes, element for element, the entire combination representing appellee's contribution to the art. We conclude the combination is supported by the description, involves novelty, and is valid. Claim 30 covers in the combination the continuous pan carrier, together with the specific pan-skipping mechanism and driving means. The other claims, 40–45, cover in combination the means for setting the pan carrier relatively forward or backward. Claim 44 was not included in the bill, but we see no error in including it in the decree.

While counsel attacks these claims individually, he fails to view each combination as an integer. Some of the patents relied on as an anticipation contain only single elements found in the combination. We find the combination contains elements which are new, and, as combinations, spell invention.

*Infringement.*—Little need be said on this question. The contest was really determined in the Patent Office between Allison and Pinkney and Green. Noninfringement, if it exists at all, must be due to the difference in means adopted by appellant to register the pan carrier to the skip while the machine is in motion. Each machine is provided with a hand wheel adjustment in the transmission between the skip mechanism and the pan carrier. The sole difference is found in the mechanism that intervenes between the hand wheel and the pan carrier. Appellant claimed that Green's wheels must be disconnected from his driving means to effect an adjustment, and, so disconnected, independent power transmission means, operable and driven by hand only, are provided, while in defendant's machine the manually operated means consist of bevel gears, whose rolling motion around the gear *60* is produced by the hand wheel *80*, the gears being in the power transmission.

To answer this contention, we must examine the claims, where we find no such limitation to the element there described as would defeat infringement because of this difference. This element in claim 40 reads:

"Means for setting said conveyer relatively forward or backward while in motion."

In claim 41 it reads:

"Manually operated means for accelerating or retarding the movement of said conveyer for the purpose of registering the pans with the skip."

As the examiner in the Patent Office well observed:

"Counts 1 and 2 (being claims 40 and 41 in the Green patent) are not necessarily limited to a construction where the normal driving mechanism for the conveyer continues in action after the means are put into operation."

"While in motion" refers generally to the machine. True, the pan carrier, too, is in motion. To advance the carrier, the "manually operated means" are used—simply by causing the "spring-pressed pawl" to engage the teeth of the gear. The operator turns the hand wheel and causes the carrier to move faster than it ordinarily drives when acceleration is desired, and slower if the operator wishes to retard the movement of the carrier. Nor does the use, in the specifications, of the word "independently," referring to this motion, limit appellee in construing these claims. The manual means act "independently" so far as acceleration or retardation is concerned, even though the driving means of the machine be attached or unattached. Acceleration as such is obtained independently of the machine provided means for driving the pans. It is obtained by the man-operated hand wheel. This is so in Green's patent machine, and it is true of the infringing machine.. In both instances a continuously running machine is provided with a hand wheel, by which the operator can quickly adjust the pan carrier forward or backward without stopping the machine.

The defense of noninfringement of these claims really goes to the question of the ruling of the Patent Office in allowing Green to insert them in his patent rather than to the question of examining appellant's machine to ascertain whether it comes within the language of the claims. Appellant constructed its machine under the Allison and Pinkney patent. Claims 1 and 2 of that patent are identical with claims 40 and 41 of Green's patent. If Green was entitled to these two claims, it would ordinarily follow that a machine constructed under the former patent would infringe the latter.

Such differences as appear do not, we think, avoid infringement. Concluding, as we do, that the Patent Office was correct in its ruling, we also conclude there was infringement.

The decree is affirmed.