### J. H. DAY CO. v. MOUNTAIN CITY MILL CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1920.)

No. 3294.

1. Patents ⚙═328—865,461, for improvement in cracker-cutting machines, invalid and not infringed.

The Ward patent, No. 865,461, for means for moving the cutting mechanism of cracker-cutting machines during the cutting operation in line with and at the same rate of speed as the moving sheet of dough to be cut, and for means for removing the scrap from the cut sheet, *held* void for want of invention, and not infringed, even if valid, as to the specific mechanical means devised.

2. Patents ⚙═27(2)—Substituting for means employed by earlier patentee of means employed in analogous art not invention.

Where an earlier patent disclosed means for effecting unison of movement between biscuit-cutting machinery and the material to be cut, the substitution therefor of means already employed in the brick-making art in connection with the cutting of plastic clay was not invention; there being a substantial analogy between the two arts.

3. Patents ⚙═310(7)—Notice of defense of prior invention not insufficient for omission of inventor's address.

In a patent infringement suit, notice of the defense of prior invention by G. was not insufficient, though G.'s address was omitted, where the notice identified him as the president of one of the defendants, a corporation which bore his name.

4. Patents ⚙═314—Findings of anticipation and priority of invention not inconsistent.

In a patent infringement suit, the finding that plaintiff's invention was anticipated by a machine manufactured by G. and a finding of priority of invention as disclosed by G.'s patent specification and claims were not inconsistent.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Suit by the J. H. Day Company against the Mountain City Mill Company and another. From a decree dismissing the bill (257 Fed. 561), plaintiff appeals. Affirmed.

Jas. L. Hopkins, of St. Louis, Mo., for appellant.
Laurance A. Janney, of Chicago, Ill., for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent to Ward, No. 865,461, September 10, 1907, and United States patent to Allison & Pinkney, No. 1,112,184, September 29, 1914, both relating to cracker-cutting machines. The District Judge found the claims of the Ward patent in suit (Nos. 1 to 9, both inclusive) void for anticipation, and that patentees were not the first and original inventors of the mechanism disclosed in the claims of the Allison & Pinkney patent in suit, viz. claims 1 and 2. This appeal is from a decree dismissing the bill.

[1] 1. *The Ward Patent.* In the usual type of cracker-cutting machines previous to Ward the dough sheet, formed between rollers, was deposited upon and carried by a traveling apron, which was given a step by step forward movement. This was known as the ratchet or step by step type. The cutting of the dough into desired form was done by vertically reciprocating cutters descending upon the dough while the apron is standing still. The stated object of Ward's invention is to provide a mechanism by which the crackers are cut from the sheet by a cutter moving in unison with the feed of the sheet, and without stopping the sheet during the cutting stroke of the dies. For effecting this result he disclosed a crank and pitman and bell crank mechanism, connected with the cutter-carrying bed and the dough-carrying apron, by which, as the bell crank is rocked, the entire cutting mechanism is reciprocated in the line of travel of the apron, so that at the instant of cutting the cutter and dough sheet (as designed) move together at substantially the same speed, so effecting a continuous and uninterrupted operation. The first claim is as follows:

"1. In a machine for cutting crackers and the like, means for feeding the sheet of dough continuously through the machine, reciprocating mechanism for cutting same into cakes, with means for moving the cutting mechanism during the cutting operation in line with and at the same rate of speed as the continuously moving sheet."

The remaining claims in suit contain nothing calling for special mention at this time, except that claim 2 contains a general element of "means for removing the scrap from the cut sheet," and in claims 3, 5 and 9 the words, "a cutter acting at right angles to the apron" are used, instead of "reciprocating mechanism for cutting the same into cakes."

Setting to one side for the present the scrap-removing feature of claim 2, it is obvious that, so far as the claims in suit are concerned, Ward's contribution to the cracker-cutting art is limited to such invention as may be found in his provision for unison of movement between cutters and dough sheet. In our opinion such invention is not present. Ward was not the first, even in the biscuit-cutting art, to provide for unison of movement between cutter knives and the material to be cut. Perky, in 1901 (thus antedating Ward's application nearly five years), disclosed a machine for cutting shredded wheat biscuit, by which the biscuit material, carried upon a continuously moving conveyor, is subdivided by a series of vertically operating knives carried by endless belts above and below the bis-

cuit-conveyor, the knives thus traveling in unison with the feed of the material during the cutting operation. The idea of unison of movement between cutters and material was thus old in what is essentially a biscuit-cutting art; and although Ward's method, as applied to ordinary crackers, of accomplishing unison of movement by horizontal reciprocation of the vertically reciprocating cutter-heads of that old art differed from Perky's method of a plurality of knives carried by belts moving constantly in unison with the feed of the material, yet in the mechanical arts generally not only was it old to effect unison of movement between cutters and the material to be cut, but it was old to accomplish such unison by a longitudinal reciprocation of the cutting element. This is illustrated by the patent to Slick (1902) on mechanism for punching a traveling iron strap as it is fed continuously forward by rolls; the punching being accomplished by a reciprocating movement of dies, causing their travel with the same speed as that of the strap at the instant of cutting. It is further illustrated by the patent to Hovey, which requires more extended reference.

The Hovey patent (No. 129,411, July 16, 1872) disclosed, in a brick machine, mechanism whereby the clay, after leaving the die, is carried by an endless apron under a vertically reciprocating knife, which is also reciprocated longitudinally with the movement of the apron: the knife thereby moving forward at the instant of cutting with the same velocity as that at which the column of clay is moving. Hovey's mechanism for longitudinal reciprocation of the cutter heads is the substantial equivalent of that employed by Ward. It is this Hovey device which the District Judge found to anticipate the device of the Ward patent. The differences between the mechanism of Hovey and that of Ward are so slight that Hovey would unquestionably anticipate Ward, were Hovey's device in the biscuit-making art. Indeed, this is conceded by plaintiff's expert.

[2] We may concede, for the purposes of this opinion, that the brick-making art and its problems are not so closely analogous to the cracker-making art as to make Hovey's disclosure an absolute anticipation of Ward. It may also be assumed, for the same purpose, that, were the Perky patent out of the case, the presence of the Hovey and kindred devices in the brick-cutting art would not be enough to deny invention to Ward in adapting the Hovey device to the cracker-cutting art. But such is not the case presented. There is a substantial degree of analogy between the brick-cutting and cracker-cutting arts; both deal with the problem of cutting a moving sheet of plastic material; and the Patent Office recognized a substantial analogy between the two arts in citing, as against the Ward application, the Chambers' patent of 1884, on brick-making mechanism. The dominant fact is that, when Ward entered the field, Perky had already applied to the biscuit-cutting art the idea of moving cutters and material to be cut in unison, had reduced the idea to practice, and had disclosed to the public operative mechanism therefor. It clearly would not have been invention to apply to ordinary cracker cutting Perky's method of vertically operating

knives carried by belts moving in unison with the feed of the biscuit material. It seems equally clear that there was no invention in substituting for Perky's means of effecting unison of movement the means disclosed by Hovey for effecting such unison in an art containing so much analogy as that of cutting a .sheet of plastic clay (Ransome Co. v. United Co. [C. C. A. 2] 177 Fed. 413, 416, 101 C. C. A. 217; McKay-Copeland Co. v. Copeland Co. [C. C.] 77 Fed. 306, 311; Id. [C. C. A. 1] 80 Fed. 518, 25 C. C. A. 611; Ohmer v. Ohmer [C. C. A. 6] 238 Fed. 182, 192, 151 C. C. A. 258), and that the patent is therefore invalid.

But, even were Ward entitled to protection to the extent to which he may have devised or adopted specific mechanical means for adapting Hovey's device to the cutting of crackers, he would be entitled in no event to more than that, and such specific means we think defendant cannot be said to employ, in view of the prior art on this subject. While defendant employs a horizontally reciprocating cutter head, its back and forth movement, communicated through a rock shaft, is made, by a highly complex mechanism, to combine a rotary movement of the crank connecting the main shaft to the rock shaft with a bodily back and forth movement of the bearing about which the crank shaft revolves, thus producing a constant and invariable movement of the cutter head during about one-third of the revolution of the crank shaft instead of (as in Ward's device) during only the moment when the cutter is completing the cut and is starting on its upward movement. Defendant's mechanism in this regard is concededly superior to Ward's. Indeed, infringement is not alleged as to either of Ward's last five claims, which include Ward's mechanism for effecting the back and forth movement, although defendant's mechanism is also adjustable.

The inclusion in claim 2 of the scrap-removing element—"means for removing the scrap from the cut sheet"—does not work an exception in favor of invention in that claim. A scrap remover was a well-known feature of the old step by step cracker-cutting machine. The types employed by Ward and defendant, respectively, are both old in the art. The addition to the "unison" type of machine of this old and common feature of the step by step machine involved no more than mechanical skill.

2. *The Allison & Pinkney Patent.* The claims in suit relate entirely to a "pan-skipping" mechanism; they are printed in the margin.[1] As already said, the trial judge found that Allison & Pinkney were not the inventors of the mechanism disclosed. The pertinent history is briefly this: February 20, 1909, Thomas L. Green

---

[1] "1. A pan carrier, consisting of an endless conveyor, a pan-skipping mechanism co-operating with said conveyor and means for setting said conveyor relatively forward or backward while in motion for the purpose of registering the pans with the pan skip.

"2. A pan carrier, consisting of an endless conveyor, a pan-skipping mechanism arranged to actuate said conveyor at certain intervals, means for driving said conveyor, and manually operated means for accelerating or retarding the movement of said conveyor for the purpose of registering the pans with the pan skip."

applied for a patent, which was issued April 18, 1916. Meanwhile, on August 3, 1912 (three years after Green's application), Allison & Pinkney filed their application, and patent thereon was issued September 14, 1914. One of Green's original claims covered generally the subject-matter of Allison & Pinkney's first and second claims. After the issue of the Allison & Pinkney patent the Patent Office declared an interference between Allison & Pinkney's first and second claims and the fortieth and forty-first claims of Green as amended to meet the Patent Office requirement. That office adjudicated the inventions to be identical and awarded priority of invention to Green. Allison & Pinkney's appeal to the Court of Appeals for the District of Columbia was there dismissed.

On the trial of the instant case below, priority of invention, as between Allison & Pinkney and Green, was directly in issue. Green testified on this subject, as did also one Morton, an engineer in Green & Co.'s factory in 1909. The testimony of both of these witnesses was taken in open court. Judge Sanford not only found by his decree that Green was the first and original inventor of the improvement in question, but in his opinion, filed as basis of that decree, said:

"The proof shows, in my opinion, beyond reasonable doubt, that Allison & Pinkney were not the first and original inventors of the differential pan-skip mechanism disclosed in claims 1 and 2 of the Allison & Pinkney patent, * * * and that the first and original inventor thereof was Thomas L. Green, the president of the defendant Green Company, who, as early as 1909, invented this mechanism, constructed a machine embodying the same and successfully operated it in Cardiff, Wales. On this point I am entirely satisfied as to the truthfulness and substantial accuracy of the testimony given by defendant's witnesses, Green and Morton, the correctness of which I see no substantial ground for questioning."

The Cardiff machine was manufactured in the United States.

[3] Consideration of the testimony suggests no sufficient reason for questioning the correctness of Judge Sanford's conclusion, and we see no merit in the objection that the notice of the defense of prior invention by Green is insufficient. Its only defect was in omitting Green's address; but the notice identified him as the president of the Thomas L. Green Company (one of the defendants), which in fact bears his name, and no one could well have failed to understand Green's identity. The objection impresses us as devoid of substance.

This conclusion makes it unnecessary to pass upon plaintiff's contention that Green's patent, applied for before he built the Cardiff machine, does not cover what plaintiff claims to be the invention of Allison & Pinkney, viz. the employment of a differential gearing as either an accelerating or retarding mechanism, and the registering of the pans with the pan skip while the pan conveyors are moving, in acordance with which contention plaintiff disclaims an interpretation of the Allison & Pinkney patent which would include what plaintiff claims is the mechanism shown by Green's patent (priority to that extent being conceded to Green), but which plaintiff says requires disconnecting the pan conveyor from its driving

power and pan-skipping mechanism. However we think plaintiff's contention in this regard not well taken. It does not accord with what seems a proper interpretation of Green's specification, which we think discloses a continuous pan feed through a positive gear transmission and adjusting means for setting the pan carrier forward or backward during the operation of the machine, so as to register the pans with the skipping mechanism. Plaintiff's contention in this respect was also specifically rejected by the Circuit Court of Appeals for the Seventh Circuit, in a suit upon the Green patent. Taggart Baking Co. v. Green, 257 Fed. 87, 168 C. C. A. 299. Plaintiff's contention is also opposed to the view taken by the patent office in awarding priority to Green.

[4] We see no inconsistency between a finding of anticipation by Green's Cardiff machine and priority of invention as disclosed by Green's patent specification and claims.

It results from these views that the decree of the District Court should be affirmed.