## J. H. DAY CO. v. GREEN et al.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

No. 3447.

Patents ⊂⇒328—1,180,030, for biscuit machine, held not infringed.

The Green patent, No. 1,180,030, for a biscuit-cutting machine, claim 30 which relates to mechanism for periodically accelerating the speed of the pan conveyor, *held* valid, but, as limited by the prior art and amendments made in the Patent Office, not infringed.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Suit in equity by Thomas L. Green and Thomas L. Green & Co. against the J. H. Day Company. From an order granting a preliminary injunction, defendant appeals. Reversed and remanded.

Robert M. See, of Chicago, Ill. (Clore, Schwab & McCaslin, of Cincinnati, Ohio, on the brief), for appellant.

Laurence A. Janney, of Chicago, Ill. (Emery, Booth, Janney & Varney, of Chicago, Ill., and William R. Wood, of Cincinnati, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This is an appeal from an interlocutory order granting a preliminary injunction restraining the appellant, the J. H. Day Company, from further infringement of claim 30 of the Green patent, No. 1,180,030. The application for this patent was filed February 20, 1909.

The bill of complaint, filed in the District Court by the appellees, Thomas L. Green and Thomas L. Green & Co., against the J. H. Day Company, charges infringement of claims 29, 30, and 40 to 45, inclusive, of the Green patent. By consent of the defendant a preliminary injunction was granted restraining defendants from infringing the claims above mentioned by the machines described in plaintiff's motion papers as the "first Day machine and second Day machine." The plaintiff thereupon filed a renewed motion for preliminary injunction, directed against a form of defendants' machine, which is the commercial development as adopted, made, used, and sold by the defendant, and described in defendants' papers on original motion for preliminary injunction in the Daniel K. Allison affidavit, upon which renewed motion the court allowed a preliminary injunction as above stated. The decree from which the appeal was taken relates solely to the infringement of claim 30 by the present Day structure.

The Green patent, No. 1,180,030, relates to a biscuit-cutting machine. The claim in question embraces the specific mechanism in this machine for periodically accelerating the conveyor carrying the pans upon which the biscuits are delivered, and reads as follows:

"In a biscuit machine, the combination with biscuit-forming means, of a continuously movable pan carrier, and driving means to periodically accelerate

the latter, including the driving gear and a driven mutilated gear, and a tooth for and of longer radius than the former for imparting an accelerated movement to the latter."

These machines are very complicated, but, the question involved in this appeal being limited to this pan-skipping mechanism only, it is unnecessary to describe them in detail, and especially is that true in view of the fact that they are rather fully described in the opinion in Taggert Baking Co. v. Green, 257 Fed. 87, 168 C. C. A. 299. It is not seriously contended in this case that claim 30 of the Green patent is invalid. On the contrary, it is insisted by appellant that this claim is not infringed by the present Day machine.

In order to determine the scope and extent of the Green invention, as covered by claim 30 of the patent in suit, it is necessary to consider the prior art, at least in a general way. Prior to Green's invention, Albert Bleile had invented and patented (No. 863,349) a skipping mechanism for periodically accelerating the pan carrier, so that each succeeding pan might be brought into position to receive the succeeding row of biscuits. This invention was incorporated into a Day machine constructed and in operation in the latter part of 1906, nearly a year before the patent was issued to Bleile. In February, 1908, a patent (No. 879,-852) was issued to Copland, which also included the equivalent of a pan-skipping device; but in the Copland patent the biscuits were deposited on the surface of the carrier and not in the pans. However, the skipping mechanism was introduced into the Copland machine for the purpose of keeping the batches of biscuits neatly separated from each other, that they might be easily and automatically stripped and transferred from the carrier to a conveyor that extended into the oven.

The problem was to connect a suitably driven power shaft with the driving shaft of the immediate group including the ultimately driven shaft which directly actuated the pan carrier at normal speed, which connection could be released or become inoperative while the driven shaft received and responded to a momentarily accelerating impulse occurring and recurring at predetermined relative positions of the synchronously revolving shafts of the structure. This problem had been solved prior to Green's invention by providing a driving pawl and driven ratchet as the connecting members, thus permitting the driven ratchet to respond to the accelerating impulse communicated to it from a source other than the pawl attached to the slower moving member, and when the force of this accelerating impulse was exhausted, the pawl would engage with another tooth of the ratchet, thereby restoring the connection of the normal drive mechanism.

Bleile accomplished this result through means of the pawl and ratchet as above described, by two separate rotating members, driven independently, but ultimately connected with the same main power shaft. One of these rotating members moved the pan carrier or conveyor continuously at normal speed; the other member, rotating at a faster rate of speed, intermittently accelerated the movement of the pan carrier. Copland did not employ separately rotating members, but, on the contrary, attached the skip mechanism to the opposite ends of the driving and driven shafts of the normal moving mechanism; but

he also used the pawl and ratchet for the purpose of disengaging, momentarily, the mechanism of the normal speed drive. Nor were Bleile or Copland pioneers in this art. Iten (1889) secured a patent (No. 401,168) on a device of this character capable of being incorporated into a cake or cracker cutting machine and adjustable without stopping the operation of the machine. The Iten invention, however, did not contemplate or include a continuous pan-carrying conveyor. Baker (1900) obtained a patent (No. 662,336) for an improvement in biscuit-making machines, which also included means for varying the speed of an intermittently moving pan conveyor to accomplish the pan-skipping operation. Both Iten and Baker used the pawl and ratchet for the purpose of momentarily detaching the normal driving mechanism to permit the accelerated speed.

In Green's application for a patent, claim 55 read as follows:

"In a biscuit machine, the combination of a continuously movable pan carrier and skip gear mechanism for giving the latter periodically a forward impulse."

This claim was rejected on Bleile, for the reason, stated by the examiner, that:

"The expression 'skip gear mechanism' not being sufficiently definite."

Thereupon Green rewrote all of his claims, and claim 55 appeared as claim 34 in the following language:

"In a biscuit machine the combination of a continuously movable pan carrier, and skip gear mechanism for giving the latter periodically an accelerated forward impulse."

This claim was rejected on Copland. Some two years later claim 30 was substituted for claim 34. In claim 30 this skip gear mechanism, attempted to be covered by claims 55 and 34, respectively, was definitely limited to a driving gear and a driven mutilated gear and a tooth of longer radius than the former for imparting an accelerated movement to the latter, and, as so limited, the claim was allowed.

It is apparent from these facts that Green was not a pioneer inventor of the pan-skipping mechanism of a biscuit-cutting machine. On the contrary, he substituted for the pawl and ratchet of Iten, Baker, Bleile, and Copland a mutilated gear for the purpose of releasing the mechanism of the normal drive, to permit the acceleration necessary for the pan skip, and accomplished this acceleration by a tooth of longer radius, firmly attached either to the same shaft as the driving gear or to the driving gear itself, and coming in contact with a projection on the driven gear substantially nearer to its shaft or axis than its periphery, which tooth and projection have a positive action at identically the same points of contact at each revolution of the shaft to which the driving gear and tooth are attached, causing and permitting a continuous, not intermittent, moving of the pan carrier, without shock or jolt.

It is the claim of the appellee that the mutilated gear and tooth of longer radius than the driving gear permits, for the first time in a rapid moving biscuit-cutting machine, a continuous movement of the pan carrier, which movement is slightly accelerated by this tooth until it reaches the highest velocity, and then gradually retarded until normal

281 F.—46

velocity is restored, without any sudden movement or abrupt change in speed that would displace the biscuits in the pan in a rapidly moving machine. However, this gradual character of the acceleration and retardation is supposed to come from the peculiar form of the projection on the driven gear, a detail not incorporated in claim 30, nor used by defendant, who gets the same character of stroke by the familiar crank for transforming circular into longitudinal motion.

It is true, perhaps, that in Iten and Baker the movement of the pan carrier was intermittent; but in Bleile and Copland the pan carrier is continuously moving. It is said, however, that in Bleile the pan skip movement is so remote from the normal slow speed driving and driven mechanism that it is far inferior to the Green machine, in which the slow speed and accelerated speed mechanism are joined in a compact unitary gear transmission. That may all be true, and to that extent Green may be an advance upon Bleile; nevertheless, Bleile had a continuously moving pan carrier, so that that feature of the machine is not dependent upon the Green pan-skipping mechanism, even though it be conceded that the Green mechanism is more certain and dependable in producing the alternation of speed and repetition of pan filling and skipping operations.

It is also true that Copland employs what is substantially a continuous moving pan carrier, although he uses no pan. That is wholly immaterial, if his invention employs and teaches a mechanism suitable or equivalent to a pan-skipping mechanism. It is clear, therefore, that the elements of the Green invention, taken either separately or in combination, have no such functional properties as permitted, for the first time, the use of a continuous moving pan carrier in connection with a pan-skip movement in a rapidly moving biscuit-cutting machine.

It is unnecessary to discuss in detail the mechanism moving the pan carrier of the present Day machine at normal speed, except in so far as it operates in connection with the pan-skipping mechanism. In the Day machine power is transmitted from the main drive shaft to the shaft carrying the driving gear, which meshes with a driven gear attached to another shaft. A second gear, rigidly attached to the shaft carrying the driven gear, drives a third gear, which freely rotates on a third shaft. It is the claim of appellee that this second gear, attached to the shaft carrying the first driven gear, is the driving gear of both the normal speed mechanism and the pan-skipping mechanism, and therefore corresponds to the driving gear of Green, to which, or to the shaft carrying the same, the tooth of longer radius is attached.

To the side of the free rotating gear above mentioned, a ratchet is bolted; while the third shaft, which directly operates the pan carrier, has a rigid projecting arm along the side of this ratchet on the free gear, which arm carries on the adjacent side and near its outer end a pawl, which normally engages with one tooth of the ratchet, and through this pawl and arm the free rotating gear and its ratchet drive the third shaft. There is also attached to the shaft carrying the driven gear, or, as claimed by appellee, the driving gear of this group of gears, a gear which drives another gear to which is bolted a crank disk. One end of a crank arm or link is pivoted to this crank disk. The other

end bears a roller which slides in a slot in an arm loosely pivoted to the shaft, upon which the free gear carrying the ratchet wheel rotates.

In the normal operation of the machine, the rotation of the crank disk causes a constant forward and backward movement of the crank arm or link pivotally attached thereto. In its forward thrust the roller attached to the far end of this arm strikes the arm attached to the shaft of the free rotating gear, causing it to move that shaft forward at accelerated speed, entirely independent of the ratchet wheel and pawl. After the force of this forward thrust of the roller attached to the crank arm is expended, the pawl engages with another tooth of the ratchet wheel, thereby restoring the normal speed of the pan carrier. The momentarily accelerated speed, accomplished in this way, produces the desired pan shift. This system of gears and ratchets differs from Bleile in no substantial particular, except that it is brought closer to the mechanism moving the pan carrier at normal speed, and the power is not transmitted to it directly from the main driving shaft, but mediately through the same shaft carrying the driving gear of the mechanism of the normal speed of the pan carrier.

While the Day machine is an advance upon Bleile and Copland, in the same sense that they were an advance upon Iten and Baker, nevertheless it involves none of the elements or the equivalents of the elements of Green's pan-skipping device, but, on the contrary, only a new arrangement of the pawl and ratchet of the prior art. It is claimed, however, that it is an infringement of claim 30 of the Green patent to connect this pan-skipping mechanism of the Day machine directly to the driving gear of the normal speed mechanism. If it were conceded, as claimed by Green, that the first driven gear in Day corresponds to the driving gear of the Green patent, nevertheless this would not constitute infringement. It is true that there may be some advantage in doing this, especially where power is communicated by belt and pulley; but it would not seem to be of any substantial advantage, where the possibility of belt slipping is entirely obviated, and the power is positively and simultaneously transmitted from the main power shaft through a system of gears or chain-driven ratchet wheels. The argument of counsel for appellee, however, in this respect, wholly overlooks the fact that in Copland the accelerating mechanism is attached to the opposite ends of the same shaft operating the normal speed mechanism.

Granting for the purpose of this argument that the limitation of claim 30 to a mutilated gear and tooth of longer radius, deliberately made by the inventor to meet and overcome the references cited by the Patent Office as fatal to his claim as first written, could be overlooked, and that a pawl and ratchet, although old in the art, could be considered the mechanical equivalent of the structure covered by claim 30 of Green as allowed, nevertheless, Green's inventive step must be found in the direct operative intermittent contact between the tooth of longer radius and the projection on the driven gear, with its resulting simplicity and effectiveness as compared with the complications and disadvantages inherent in a series of connecting elements, as in the older forms of the pawl and ratchet arrangement. Therefore Green cannot plausibly claim, even upon the utmost liberality of construction, that

the Day adaptation of the old pawl and ratchet method infringes, in any degree, whatever of advance there may be in the Green invention. In Day, instead of direct contact between the parts claimed to be the equivalent of the two contacting arms of Green, Day has interposed a gear, a shaft driven thereby, a crank disk on this shaft, a crank pin on the disk, a crank arm or link on the crank pin, a supporting arm loosely carried upon the shaft carrying the free rotating gear for the other end of the link, a slot and pin connection between this arm and this link end, and a striking pin carried by the link end. It would therefore appear that there are a large number of additional connections in Day, permitting troublesome wear and breakage, and constituting such an entire departure from Green's basic idea that it can in no sense be said to be the equivalent, either of the inventive idea or the means employed by Green to avoid these complications, and in which resides whatever of invention may be found in his structure.

The trial court found, in which finding this court concurs, that:

"Day, in replacing the accelerating mechanism of Green by the pawl and ratchet form of acceleration, substituted nothing new, but, on the contrary, used an ancient form performing the same function."

By this the court doubtless referred to the disconnecting elements, rather than to the entire mechanism, and it necessarily follows from this finding that, if the ancient form is the equivalent of Green, then Green's device, in this particular, at least, is not invention. We are of the opinion, however, that Green's pan-skipping mechanism as a whole is invention, and entitled to patent protection, and that claim 30 is valid; but, that being true, the pan-skipping mechanism of the prior art cannot be infringement of that claim.

The trial court, in discussing the questions of mechanical equivalency in connection with express limitation, referred to the case of D'Arcy Co. v. Marshall Co., 259 Fed. 236, 240 (170 C. C. A. 304). We think, however, that the doctrine there announced has no application to the facts in this case. In that case the limitation pertained, not to the inventive step, but to its environment, and, nothing appearing to the contrary, the court assumed that the limitation was voluntary and unnecessary. This court, however, held in that case that—

"Where the claim defines an element in terms of its form, material, location, or function, thereby apparently creating an express limitation, where that limitation pertains to the inventive step rather than to its mere environment, and where it imports a substantial function which the patentee considered of importance to his invention, the court cannot be permitted to say that other forms, which the inventor thus declared not equivalent to what he claimed as his invention, are nevertheless to be treated as equivalent, even though the court may conclude that his actual invention was of a scope which would have permitted the broader equivalency."

The limitations in claim 30 define the elements of Green's invention in terms of form, location, and function. Green's invention covers two ideas, one as much as the other—means for the accelerated drive, and means for simultaneously disconnecting the normal drive. Each not only pertains to the invention, but is an inherent part of it. Neither was merely the field or environment in which the complete invention could operate. It was a familiar mechanical expedient to get a varia-

ble drive as between two shafts geared together by using a pair of gears, each appropriately mutilated, and this was, in principle, what Green did. His invention consisted in putting this old expedient into this combination, with the necessary adaptive changes.

The Patent Office history discloses that these limitations were not unnecessary or merely voluntary on the inventor's part, but, on the contrary, that the broad claim as stated in the first and second draft, as hereinbefore copied, were rejected by the Patent Office, and that this limited and restricted claim was substituted in acquiescence in such rejection. It necessarily follows that the inventor, by acquiescence in the rejection of a broad claim and his acceptance in its place of one distinctly limited, estops himself from claiming that which he has surrendered. Vanmanen v. Leonard, 248 Fed. 939, 941, 161 C. C. A. 57; Houser v. Starr, 203 Fed. 264, 269, 121 C. C. A. 462.

For the reasons stated, the judgment of the District Court is reversed, and cause remanded for further proceedings not inconsistent with this opinion.