### DIAMOND MFG. CO. et al. v. DALLAS BRASS & COPPER CO.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1924.)

No. 3893.

I. Patents ⬳178—What is claimed as a patentable distinction cannot also be claimed as an equivalency to establish infringement.

What is claimed to constitute a patentable differentiation from the prior art, to give validity to a patent, cannot be claimed as an equivalency for the purpose of establishing its infringement.

2. Patents ⬳328—Beebe, No. 1,034,954, for tube-forming machine, held void for lack of invention.

The Beebe patent, No. 1,034,954, for a tube-forming machine, claims 1–4, held void for lack of invention.

Appeal from the District Court of the United States for the Eastern District of Michigan; John M. Killits, Judge.

Suit in equity by the Dallas Brass & Copper Company, impleaded as A. C. Dallas & Son, Incorporated, against the Diamond Manufacturing Company and the Motors Products Corporation. Decree for complainant, and defendants appeal. Reversed and remanded.

Edward Rector, of Chicago, Ill. (William J. Belknap, of Detroit, Mich., on the brief), for appellants.

John W. Hill, of Chicago, Ill., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The action was originally brought by A. C. Dallas & Son, Incorporated, against the Diamond Manufactur-

ing Company, for infringement of claims 1 to 4, inclusive, of United States letters patent No. 1,034,954, issued to the plaintiff corporation August 6, 1912, on the application of John D. Beebe, filed May 21, 1910. Later a supplemental bill was filed, alleging that the Motor Products Corporation had absorbed and succeeded to the business of the Diamond Manufacturing Company, and the Motors Products Corporation was made a party defendant. The defenses are invalidity and noninfringement. The District Court found the claims in suit valid and infringed.

The patent relates to tube-forming machines, in which a tube of any length provided with a locked seam is formed from a strip of sheet metal while it is being fed through the machine. The claims in issue are printed on the margin.[1]

Lock seam tubing and machines for manufacturing the same are old in the art. Nor is there anything new or novel in the combination of the elements of feeding rolls, forming die, and seaming rolls rearwardly of the die, in machines of this character; but it is claimed that the invention of the patent in suit rests in the novel combination and coordination of parts providing means by which a new method or mode of operation is secured, making it possible to produce by a rolling mechanism, quarter-inch seamed tubing of soft, thin copper or brass, suitable for use in automobile radiators.

The first of these features that it is claimed distinguishes the Beebe patent from the prior art is described in the patent in the following language: -

"A series of forming dies spaced apart, avoiding the necessity, difficulty, and expense accruing to the use of a single die, as used in the machine of the prior art, for performing the same bending operation, and thereby reducing the friction between such a die and the strip, which of necessity follows the use of a single forming die."

---

[1] 1. A tube-forming machine, comprising in combination a pair of strip edge bending rolls, a plurality of separated bending dies, final tube-forming rolls rearwardly beyond said dies, and feed rolls pushing the strip and tube forwardly between said dies and bending rolls, substantially as described.

2. A tube-forming machine, comprising in combination rolls reversely bending the side edges of a strip passing through the machine, feed rolls bending and pushing said strip forwardly between bending guides and compressing rolls, a plurality of bending dies separated from each other and locking the joints, a grooved mandrel, and rolls compressing the locked joint into said groove and within the periphery of the tube, substantially as described.

3. A tube-forming machine, comprising in combination means for first bending the edges of a strip of metal in several directions for forming an interlocking joint, pushing feed rolls for said strip, a plurality of separated dies forming up a tube from said strip and interlocking the joint thereof, a mandrel provided with a groove, and means for compressing the interlocked joint of the tube into said groove, substantially as described.

4. A tube-forming machine, comprising in combination bending rolls for forming up subsequently locked joints on the edges of a strip of metal, pushing feed rolls for and partially bending said strip, a plurality of separated dies forward of said feed rolls, finally bending and interlocking said strip in tubular form, and rolls forward of said dies for finally compressing said joint, substantially as described.

[1] The machine now in use by the Motors Products Corporation does not include the multiple dies of the Beebe patent, but, on the contrary, the integral die of the prior art. It is insisted upon the part of the appellee that this use of the single die in the combination of elements does not avoid infringement, for the reason that the integral die is the mechanical equivalent of the multiple die. If it were conceded that the separation of the integral die into a series of dies, performing substantially the same functions in shaping the tube and interlocking seams, involved invention, this claim of equivalency could not be allowed. Beebe, in his application for this patent, has not only expressly disclaimed the single die, but he has intentionally, whether voluntarily or otherwise, limited the claims in suit to multiple dies. McCallum v. Coal Co. (C. C. A.) 268 Fed. 831; Schultz et al. v. Jackson Cushion Spring Co. (C. C. A.) 271 Fed. 665, and cases there cited.

But, wholly apart from the consideration of disclaimer and intentional limitation, it necessarily follows that, if the integral die is so far the equivalent of multiple dies as to infringe this patent, then the separation of this same single die into a series of dies did not amount to invention. Day Co. v. Green et al. (C. C. A.) 281 Fed. 719, 724.

[2] It is claimed, however, that the essence of Beebe's invention lies in the push feed, and for that reason the substitution of an integral die for multiple dies in a structure that infringes the push feed element of the Beebe machine is wholly unimportant. D'Arcy v. Marshall (C. C. A. 6) 259 Fed. 236, 238, 170 C. C. A. 304. The prior patent art is substantially, if not fully, exemplified in Wiet, No. 854,136 (1906); Ritchie, No. 328,974 (1885); Webster, 950,163 (1910); Quadling & May, No. 146,358 (1874); Quadling & May, British patent, No. 3,559 (1872); Taylor, British patent, No. 2,294 (1869); Lake, British patent No. 1,973 (1867); Smith, No. 57,783 (1866).

It is unnecessary to discuss these patents in detail. They disclose various types of machines for the manufacture of lock seam tubing of larger dimension than the tubing used in automobile radiators, for the manufacture of which smaller tubing it is claimed that the Beebe machine is specifically adapted. These machines of the prior patent art include, in combination, forming or feeding rolls, a die, a mandrel, and seaming rolls. In the operation of these machines the feeding rolls grip the metal strip, partially form it and push it forward into the die, which shapes it into a tubular form upon a mandrel, interlocking the bent edges to form the same. The seaming rolls then engage with the tube as the end is pushed forward from the die and by pressure flatten the same. These rolls, after coming in contact with the forward end of the tube, assist to some extent, at least, in pulling the tube over the mandrel and pushing it out of the machine.

To overcome the friction of the tube upon the mandrel, some of these machines are equipped with draw benches; others, with antifriction devices positioned within the mandrel, and separating the tube therefrom. Others have seaming rolls, the periphery of which is milled or equipped with positive engaging calks or studs, which engage the seam of the tube. The draw bench pulls the tubes from the machine section by section. It is a slow process, and for that reason

has practically been discarded. In the manufacture of small tubing the mandrel is not of sufficient size to permit the positioning of anti-friction devices therein, and it is the theory of the appellee that a seaming roll having a milled periphery or positive engaging calks or studs would be destructive of the soft, thin copper or brass material used in the manufacture of small radiator tubes.

In the manufacture of the larger tubing, a correspondingly larger mandrel is used than in forming the smaller ones. Were it not for the anti-friction devices positioned within these larger mandrels, they would necessarily present a greater area of contact with the metal of the tube than the smaller mandrels. The amount of friction occasioned thereby would naturally depend upon the area of contact, and while the ratio of the friction to the area of contact might remain the same, yet the force required to overcome the friction of the larger tubes upon the larger mandrels would necessarily be greater than the force required to overcome the friction of the smaller tubes upon the smaller mandrel; yet this difference in the degree of force required to overcome friction might be more than counterbalanced, even if no anti-friction devices were used in the larger mandrels, by the lessened means of applying force, by reason of the lack of resistance in the thin, soft metal used in forming the smaller tubes.

It is claimed on behalf of the appellee that by reason of the impossibility of using anti-friction devices in so small a mandrel the friction of these smaller tubes is actually increased, at the mandrel end, over the friction in the machines of the prior art; that none of the means employed in the manufacture of larger tubing for overcoming this friction is available in the manufacture of the small tubings out of soft, thin metal; that this was the problem that confronted the manufacturers of small tubes; and that Beebe solved this problem. On the other hand, it is claimed that the manufacture of small tubing presents no problem that is not answered by the prior art; that the machines for manufacturing larger tubing can readily be adapted to the manufacture of the small tubing; that Beebe, when he filed his original application, recognized no such problem, and had made no effort whatever to solve the same, but, on the contrary, based his claim of invention upon the separation of the integral die into multiple dies, and that it was only after this claim was rejected by the Patent Examiner that astute counsel evolved the theory of the push feed, and thereupon the application was amended, without further verification, to include this feature, which it is now claimed is the essence of Beebe's invention.

In determining whether the manufacturing of small tubing presented the problem above stated, a consideration of the means, not found in the prior art, employed by Beebe to overcome this friction, is of first importance. It is claimed that Beebe conceived the idea of relieving the shaping dies, which in the prior art offered most of the resistance, from as much of the work as possible by having the metal strips curved in the central portion, and with hooks formed on its edges by the action of the feed roll before it reached the die. This claim is wholly inconsistent with the claim, above stated, that the increased friction is at the mandrel end of the machine, and it is not sustained

by the evidence. On the contrary, it appears that the feeding or forming rolls of Ritchie, Quadling & May, Wiet, and Taylor contributed at least as much, if not more, to the forming of the metal before it entered the die as the feeding or forming rolls of the Beebe machine. If, on the other hand, as stated in brief of counsel, the shaping dies of the prior art machines offered most of the resistance, the feeding rolls of the prior art machines necessarily overcame that resistance, and pushed the metal through the forming die into the seaming rolls rearwardly of the die.

It is further claimed that Beebe, having conceived the idea of curving the central portion of the metal strip, with hooks formed on its edges by the action of the feed rolls before reaching the dies, so as to relieve the dies of much of their work, curved the thin, ductile metal in cross-section upward, or in a transverse direction, as shown in Fig. 6 of his patent, and that the curving of this metal into U-shape serves to stiffen it greatly and give it rigidity for an end thrust by the force of the feeding rolls, which firmly grip this curved metal on its opposite sides or faces, and push it onward. That the curving of this metal into a U-shape by the action of the forming or feeding roll was neither new or novel to the art is fully shown by an examination of the patents above cited, all of which show equally as much, if not more, curving of the metal by the feeding or forming rolls than is accomplished by the same rolls of the Beebe patent.

These are the only reasons assigned why the feeding rolls of the Beebe machine can and do exert more of a pushing force than the feeding rolls of the prior art machine, and these claims are not sustained by the evidence. All the rolls of the Beebe machine and the prior art machines are equipped with means for adjusting the pressure; that matter is wholly within the will of the operator. It is evident that the machines of the prior art in ordinary operation must and do exercise a pushing force sufficient to feed the metal through the die and into the seaming rolls, and it is equally evident that by the adjustment of the pressure of these rolls their pushing force can be increased to the limit of the resistance of the metal.

It is also perfectly apparent that the seaming rolls of the Beebe machine exercise a pulling and pushing force of the same kind, if not degree, as the pushing and pulling force exerted by the seaming rolls of the prior art machines. The pressure of the seaming rolls must be adjusted, so that the pressure exerted will firmly and securely close the interlocking seam of the tube. In the performance of their primary function, these rolls, no doubt, exert more pressure on the metal of the tube than any other rolls in the machine, and for that reason would necessarily exert a correspondingly greater driving force, both in pulling and pushing.

That this must be true is clearly evidenced by the fact that after the end of the metal strip, out of which the tube is formed, has passed out of the feeding rolls, the seaming rolls supply the only driving force available for pulling the metal through the dies and pushing it off of the larger end of the mandrel where the greatest friction is found. This in and of itself is sufficient to destroy the theory of the appellee

that the pushing force exerted by the feeding rolls of the Beebe machine is the master force that drives the metal through the various tube forming operations unaided by any pulling force exerted by the seaming rolls, even though the evidence had demonstrated the primary proposition that the feeding rolls of the Beebe machine were so constructed, and so shaped the metal as to provide and permit greater pushing force than could be exerted by the feeding rolls of the prior art. On the contrary, it is a self-evident proposition that the feeding and seaming rolls of the Beebe machine co-operate with each other in the same way and to the same effect as the feeding rolls and the seaming rolls of the machines of the prior art, and, so operating, they provide a safe margin of driving force, either pulling or pushing, or both, to overcome the resistance of an integral die or multiple dies, and the friction created by the contact of the inner side of the tube with the larger end of the mandrel, without the necessity of draw bench, anti-friction devices positioned within the mandrel, milled edges, or positive engaging calks or studs on the seaming rolls.

For the reasons stated, this court is of the opinion that the claims in suit do not disclose invention. The judgment of the District Court is reversed, and the cause is remanded, with instructions to dismiss the bill of complaint.